United States District Court
Southern District of Texas
**ENTERED**
July 01, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Stephen Jon Bjorklund, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:21-cv-01810 |
| v. | § | |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner of Social | § | |
| Security | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

This is an appeal from an administrative ruling that denied Plaintiff Stephen Jon Bjorklund's request for social security benefits. After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court recommends granting Bjorklund's Motion for Summary Judgment (Dkt. 16), denying Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 14), vacating the decision of the Social Security Administration, and remanding this case for further proceedings.

## Background

Bjorklund filed for social security benefits on April 10, 2019, based on his reported autism spectrum disorder, depression, obsessive compulsive disorder (OCD), anxiety, and post-traumatic stress disorder (PTSD).  R.87, 137.  He dated the onset of his disability back to January 1, 2015.  R.137.  Bjorklund's claim was initially denied on July 16, 2019, and then again upon reconsideration on November 25, 2019.  R.18, 87-90.  He sought and obtained a hearing before an administrative law judge ("ALJ").  *Id.*

Before the hearing, Bjorklund submitted lengthy medical records, including records from his mental health provider, nurse practitioner Mark Lejsek.  *See* R.228-99, 376-93, 401-03.  Bjorklund also submitted Mr. Lejsek's credentials from the Texas Board of Nursing.  R.405-06.  The records indicate that, from 2014 to 2020, Mr. Lejsek treated Bjorklund's symptoms, including anxiety, depression, and sleep disorders.  R.268, 401.  During that time, he was prescribed numerous daily medications: Cymbalta, Seroquel, Wellbutrin, Paxil, trazodone, Xanax, Ambien, benztropine, hydroxyzine, Pristiq, and Rexulti.  R.228, 258, 401.

At the hearing, Bjorklund testified that his symptoms arise out of a serious car accident he experienced as a child.  R.38-39.  Though he survived, his grandfather "died on top of [him]."  *Id.*  Around the same time, Bjorklund reported that he had "problems going to school" and received special education.

2

R.39.  He did not complete high school and failed the GED the one time he took it.  R.39-40.  Bjorklund could not recall precisely when he began psychiatric treatment, but testified that it dated back to his childhood issues.  R.41.

Bjorklund also testified that has never held a job long-term.  R.35, 158. He worked for two days at a Little Caesar's pizza restaurant and "a couple of days" for a friend's lawn service business.  R.44-45.  His longest employment lasted five months when he worked as a dishwasher at another pizza restaurant.  R.158-59.  He has not been employed since he was a teenager. R.36.  When asked why he struggled with employment, he testified that he "get[s] nervous, and freak[s] out, and [has] panic attacks quite often.  R.36.  He also cannot drive because of his PTSD.  *Id.*

A vocational expert (VE) also testified.  *See generally* R.48-51.  The ALJ asked only one question: whether a hypothetical person with Bjorlund's age, education, and work history could find a job in the national market, provided that this person had fewer limitations than proffered by Bjorklund and his medical providers.  R.49.  The VE testified that this hypothetical person could work in light- to heavy-exertion, unskilled jobs such as a brush clearing laborer, kitchen cleaner, or housekeeper.  *Id.*

On July 10, 2020, the ALJ issued a decision denying Bjorklund's claim. R.18-26.  The ALJ found that Bjorklund had not engaged in substantial gainful activity since his filing date of April 10, 2019.  R.20.  He also found that

3

Bjorklund has a number of impairments that limit his basic work activities: major depressive disorder, generalized anxiety disorder and PTSD.  *Id.* Bjorklund's impairments, however, were found not to meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpt. P, App'x 1.  R.21-22.  The ALJ determined that Bjorklund's mental limitations were moderate in severity and ultimately found that Bjorklund had the residual functional capacity (RFC) to:

> Perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple, nonproduction rate pace jobs with and (sic) infrequent changes to work procedures.  The claimant is limited to occasional interaction with the public and occasional contact with coworkers and supervisors.

R.22.  He also found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R.24.

The ALJ then relied on the VE's testimony to find that Bjorklund could perform work available in the national economy, such as that of a brush clearing laborer, kitchen helper, and housekeeper.  R.26.  Thus, the ALJ found that Bjorklund was not disabled and denied his request for benefits.  *Id.*

On May 28, 2021, Bjorklund filed this appeal of the ALJ's decision.  Dkt. 1.  Both parties filed motions for summary judgment and responses.  Dkts. 14-16, 19.  The appeal is now ripe for the Court's review.

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted)).  It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)) (internal quotation marks omitted).  When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

<u>**Analysis**</u>

**I.    <u>Legal Framework</u>**

"The Commissioner uses a sequential, five-step approach to determine
whether a claimant is ... disabled: (1) whether the claimant is presently
performing substantial gainful activity; (2) whether the claimant has a severe
impairment; (3) whether the impairment meets or equals a listed impairment;
(4) whether the impairment prevents the claimant from doing past relevant
work; and (5) whether the impairment prevents the claimant from performing
any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776
(5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote
omitted).   Before moving from step three to four, the ALJ determines the
claimant's residual functional capacity, which the ALJ uses to evaluate step
four and five. *Morgan v. Colvin*, 803 F.3d 773, 776 n. 2 (5th Cir. 2015) (quoting
20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a
prior step that the applicant is or is not disabled, the evaluation process
stops ...." *Morgan*, 803 F.3d at 776 (citing 20 C.F.R. § 404.1520(a)(4)).   The
claimant bears the burden of proof at the first four steps. *Kneeland v.
Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017).   At the fifth step, the burden of
proof shifts to the Commissioner "to establish the existence of other available
substantial gainful employment that a claimant can perform." *Id.*

6

II.   **The ALJ Failed to Adequately Explain Why He Rejected the Opinions of Mark Lejsek When Formulating Bjorklund's RFC.**

Bjorklund mounts no meaningful challenge to the ALJ's findings other than the formulation of his RFC.  In particular, Bjorklund's two-word declaration of disagreement with the ALJ's finding (at step three) that Bjorklund's impairments did not meet or equal any listed impairment does not suffice.  *See* Dkt. 16 at 3 ("We disagree."); *Wells v. Astrue*, 392 F. App'x 354, 355 (5th Cir. 2010) (per curiam) (failure to develop arguments "with any specificity" results in waiver).

As for Bjorklund's RFC—a predicate to steps four and five of the analysis, 20 C.F.R. § 404.1520(a)(4)—Bjorklund argues that the ALJ erred in two ways.  First, he contends that the ALJ failed to evaluate the medical opinion of Mark Lejsek, PMHNP-BC, a nurse practitioner who provided psychiatric treatment to Bjorklund.  Dkt. 16 at 5.  Second, he argues that the ALJ cherrypicked evidence from a consultative evaluation and disregarded evidence that undermined the ALJ's RFC.  *Id.*  Because the Court finds that Bjorklund's first point of error should be sustained and remand is recommended on that ground alone, it need not reach the second point of error.

A.   **The ALJ must explain his assessment of medical evidence.**

For claims filed on or after March 27, 2017, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's

7

persuasiveness. *See Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Id.* (citing and quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are supportability and consistency. *Id.* § 404.1520(c)(b)(2).

As the Commissioner correctly notes, Dkt. 19 at 2, the changes abrogated the old rule that treating physician opinions are entitled to controlling weight. 20 C.F.R. § 416.920c(a). But under the new rules, a "sufficient explanation of the supportability and consistency of medical opinions is still a critical portion of the analysis." *Pearson v. Comm'r of Soc. Sec.*, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted*, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021).

"Considering the regulations' newness," the Court was unable to find— and the parties do not provide—controlling authority as to "what constitutes a sufficient 'explanation' of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2)." *Shugart*, 2022 WL 912777, at *3. Courts that have addressed the issue, however, have required that "there be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (collecting cases). A generic statement or summary

that a medical provider's opinion is inconsistent with the record as a whole does not suffice, because "the Court cannot undertake a meaningful review of the ALJ's consideration" of the medical opinions." *Id.* at \*7; *Cooley v. Comm'r of Soc. Sec.*, 2021 WL 4221620, at \*7 (S.D. Miss. Sept. 15, 2021) (same). Without guidance from the ALJ, the reviewing court can only speculate about his reasons for finding an opinion unpersuasive. *Ramirez v. Saul*, 2021 WL 2269473, at \*6 (W.D. Tex. June 3, 2021); *Pearson*, 2021 WL 3708047, at \*5.

### B.   The ALJ failed to explain why Mark Lejsek's opinion was unpersuasive.

Bjorklund argues that the ALJ erred in disregarding the opinion of Mark Lejsek, the nurse practitioner who has provided mental health services to Bjorklund since 2014.  Dkt. 16 at 5-11; R.388.  Mr. Lejsek had several opinions about Bjorklund's limitations with respect to performing work that, if considered, would have affected the outcome of the ALJ's determination.  Dkt. 16 at 11.  Among other medical records from Mr. Lejsek's treatment, Bjorklund contends that Mr. Lejsek's Mental Residual Capacity Form indicated that Bjorklund would struggle with a number of mental-health issues at work, such as dealing with stress and maintaining regular attendance, and these opinions should have been persuasive to the ALJ in the determination of his RFC.  *Id.* 9-10 (referencing R.388-392).  According to Bjorklund, the ALJ's failure to "explicitly discuss" the evaluation of Mr. Lejsek's opinion was reversible error.

9

*Id.* at 11.  The Court agrees and finds that the ALJ's discussion of Mr. Lejsek did not comport with the requirements of 20 C.F.R. § 404.1520c.

The ALJ's discussion of Mr. Lejsek's opinions and persuasiveness is limited to a single paragraph in the decision:

> Mark Lejsek, PMHNP-BC opined the claimant is limited in his ability to use public transportation, understanding and remembering detailed instructions, maintain attention for two hour segments, work in coordination with or proximity to others without being unduly distracted, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavior extremes and respond appropriately to changes in a routine work setting (Exhibit 8F, p. 4-5).  He also opined the claimant is seriously limited in his ability to interact appropriately with the public, maintain socially appropriate behavior and adhere to basic standards of neatness (Exhibit 8F, p. 4-5).  He also indicated the claimant is unable to meet competitive standards of traveling in an unfamiliar place, dealing with the stress of semi-skilled and skilled work, maintaining regular attendance and be punctual, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions from psychological based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods and dealing with normal work stress (Exhibit 8F, p. 4-5).  He further opined the claimant would miss more than four days per month (Exhibit 8F, p. 5).  Overall, I do not find his opinion to be persuasive.  His opinion contains many limitations which are not all supported by the evidence of record or consistent with the evidence either.

R.25.  This paragraph constitutes nothing more than a summary of Mr. Lejsek's medical opinions, followed by the ALJ's conclusory statement that they are not persuasive because some (unspecified) aspects of those opinions are inconsistent with the entire record.  This generic reference to the record as

a whole is precisely the scant, "general assertion" that disregards the ALJ's affirmative duty to "*explain* how [the SSA] considered the supportability and consistency factors for a medical source's medical opinions."   20 C.F.R. § 404.1520c(b)(2) (emphasis added).

Again, the Court notes the dearth of controlling authority interpreting the post-March 2017 regulations.  Nonetheless, district courts within the Fifth Circuit thus far have concluded that spare, conclusory explanations cannot satisfy Section 404.1520c—even if the ALJ's ultimate finding is potentially supportable by the record.[1]   *Compare Shugart*, 2022 WL 912777, at *4; *Pearson*, 2021 WL 3708047, at *7; *Cooley*, 2021 WL 4221620, at *7; *see also Moore v. Saul*, 2021 WL 754833, at *3 (S.D. Miss. Feb. 26, 2021) (rejecting a

---

[1] Courts around the country have reached similar conclusions.  *See, e.g.*, *Todd v. Comm'r of Soc. Sec.*, 2021 WL 2535580, at *7-8 (N.D. Ohio June 3, 2021) (even if substantial evidence could support the ALJ's "ultimate conclusion," his "terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion that [the medical provider's] opinion was substantially inconsistent with the medical record"), *report and recommendation adopted*, 2021 WL 2530846 (N.D. Ohio June 21, 2021); *Raymond M. v. Comm'r of Soc. Sec.*, 2021 WL 706645, at *8-9 (N.D.N.Y. Feb. 22, 2021) (ALJ "provided no substantive explanation" for finding a medical opinion persuasive, making "only general reference to the state agency consultant's expertise and experience, and his review of the available record"); *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *15 (S.D.N.Y. Jan. 29, 2021) (ALJ "failed entirely to apply the new regulations" by not "provid[ing] a rationale for discounting the opinions of Plaintiff's own treating medical sources"), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022); *accord Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 11 (W.D.N.Y. 2021) (new regulations require ALJ to explain his persuasiveness findings by "pointing to specific evidence in the record").

healthcare provider's opinions "by implication" and without explanation was insufficient because "the regulations now require more").

Accordingly, the ALJ failed to meet the explanation requirements of 20 C.F.R. § 404.1520c when disregarding the medical opinions of Bjorklund's primary mental healthcare provider.  The ALJ did not discuss the source for any of Mr. Lejsek's opinions, nor does he compare his opinions to other record evidence or competing medical opinions.  R.25.  By referring generically and globally to all record evidence, the ALJ's statement improperly forces this Court to guess what particular evidence—some of which may be corroborating—led the ALJ to discount Mr. Lejsek's opinions.  *Id.*  Moreover, the ALJ's disregard of Mr. Lejsek's opinions is made even more confounding by ALJ's affirmative reliance on Mr. Lejsek's opinions as medical evidence that undermined Bjorklund's own testimony.  R.24 (ALJ's reference to Bjorklund's "medical provider's," *i.e.*, Mr. Lejsek's, observations that Bjorklund had not taken initiative to find structure or routine to improve his mental health).

It is unclear why Mr. Lejsek's opinions were adequately persuasive to defeat a finding of disability but not adequately persuasive to support it. *Pearson*, 2021 WL 3708047, at *5 ("[T]he ALJ cannot summarize the entire record and summarily conclude that, in light of that record, one medical opinion is persuasive and the other is not persuasive.") (citations omitted). Given the lack of explanation and potential inconsistency, the Court declines

to speculate about the record and build this logic bridge on the ALJ's behalf. *Id.* at *6 (citing *Ramirez*, 2021 WL 2269473, at *6, for the principle that "it is neither the role of the Commissioner nor this Court to supply *post hoc* rationalizations for the ALJ's conclusions"). The ALJ committed error through his omission, and Bjorklund's first point of error should be sustained.

### C.   Remand is appropriate because the ALJ's failure to comply was not harmless.

Having determined that the ALJ erred, the Court turns to the question of whether the ALJ's error was harmless. *See generally Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (analyzing an ALJ's failure to provide an explanation for a different step-three finding). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Shugart*, 2022 WL 912777, at *4 (quoting *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006)). That is not so here.

Bjorklund argues that the ALJ's failure to consider Mr. Lejsek's opinions resulted in an inaccurate RFC finding; in turn, the RFC the ALJ to conclude that Bjorklund could perform available jobs in the national market. Dkt. 16 at 11. The Court agrees that the ALJ's legal error was not harmless. Mr. Lejsek was Bjorklund's primary treating provider from 2014 to 2020. R.268, 401. He provided a number of opinions on Bjorklund's capacity for consistent work, which, if considered, may have resulted in the formulation of a different RFC.

13

R.25.  And, as noted above, the ALJ's decision somewhat inconsistently relies on Mr. Lejsek's opinions that cut against Bjorklund while rejecting those that favor a stricter RFC.  *See* R.24 (ALJ's reliance on Mr. Lejsek's observations that Bjorklund had not undertaken steps to improve his mental health).

The RFC's use in steps four and five compounds the error, making it more "conceivable that the ALJ could make a different administrative decision upon further review."  *Shugart*, 2022 WL 912777, at *4.  The legal error was therefore prejudicial because it "clearly implicates [Bjorklund's] substantive rights."  *Cooley*, 2021 WL 4221620, at *8.  Remand is necessary for the ALJ to conduct further proceedings, which must comport with Section 404.1520c.

## Recommendation

Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 16) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 14) be **DENIED**, that the decision of the Commissioner of the Social Security Administration be **VACATED** and the matter be **REMANDED** for further administrative proceedings.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for**

14

plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on July 1, 2022 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

15